# BARBARA WEIGAND *vs.* THE FRATERNITIES ACCIDENT ORDER.

*Benefit Society—Beneficiary of Death Certificate Must Exhaust Remedies Within the Organization, According to By-Laws, Before Bringing an Action at Law.*

A benefit society issued a certificate to a member promising to pay to his wife (the plaintiff in this case) a certain sum, in accordance with the by-laws of the order, in the event of the death of the said member through external and accidental means. The laws of the order required that all claims under such certificates should be first passed upon by the executive committee and that any beneficiary dissatisfied with the decision of the executive committee must appeal therefrom to the Grand Council, within sixty days after the decision is rendered. Upon the death by accident of the plaintiff's husband she applied for the payment of the amount named in her certificate, but the executive committee decided that she was entitled to only a small part thereof. The plaintiff refused to appeal to the Grand Council and instituted this action. *Held*, upon demurrer to a plea setting forth the above facts, that the plaintiff is bound by the regulations of the defendant society, although only a beneficiary and not a member, and that she is precluded from bringing suit upon the certificate until after exhausting her remedies within the organization.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*William S. Bryan, Jr.* (with whom was *Jos. L. McAllister* on the brief), for the appellant.

The legal proposition sought to be advanced by this special plea, manifestly is, that it was the duty of the appellant, under the rules of the appellee, to submit her claims against the defendant, to the tribunals of the appellee—in other words, to permit the appellee to be judge in its own case—and that these rules were binding upon the appellant. It is submitted that this position is untenable, and that the rule requiring claims for benefits to be submitted to the tribunals of the order is invalid and not binding upon the appellant.

It is to be noted that the precise question to be decided is whether *the beneficiary* in a certificate of fraternal insurance, *to whom the insurance money is made directly payable* on the death of the assured, by the terms of the certificate, is prevented from bringing a suit in the ordinary Courts of justice to enforce her claim, by a regulation of the beneficial association (not appearing on the face of the certificate), requiring her, *a stranger to their order*, to submit her claims against the order to the decision of the tribunals and agencies of the association. It is not a question as to whether a beneficial association can provide private tribunals for the investigation and decision as between its own members of questions of doctrine, or of discipline; nor is it even a question whether a member by joining one of these associations can divest himself of the right to appeal to the Courts of the land rather than to the tribunals of the order for sick or other like benefits, payable to him personally.

As will be attempted to be shown later on, the better opinion is that a rule or by-law, attempting to deprive *a member* of the right to assert his claim against a beneficial order is unenforceable, because contrary to public policy, but on this point the decisions throughout the country are not in accord. It is also to be remembered that this is not a case where a member of a beneficial association has submitted his claim against the association to the tribunals of the association, and *after those tribunals have decided against him*, he has attempted to appeal to the Courts.

A. It is a familiar principle of law that agreements in advance to arbitrate, or to submit controversies, hereafter to arise, to arbitration, are void, as against public policy, because they would oust the jurisdiction of the Courts, and would deprive the parties of their inalienable right—not capable of being surrendered or bartered away—of seeking redress in the Courts for any wrongs done them. The general principle that a valid agreement cannot be made to oust the Court of law or equity of their jurisdiction, has been recognized in all jurisdictions where the English system of law prevails since

long before the decision in the Court of King's Bench in the case of *Thompson* v. *Charnock*, 8 Term. Rep. 139.

"Where parties to a contract enter into an absolute agreement or covenant that in case a dispute should arise under such contract, all matters in difference between them shall be submitted to arbitration, such stipulation is void on grounds of public policy, because to give effect to it, would be to oust the Courts of their jurisdiction." 2 *Am. & Eng. Ency. of Law,* (2nd ed.), 570. That agreements to arbitrate are not enforceable is settled by conclusive adjudications. *Allegre* v. *Md. Ins. Co.,* 6 H. & J. 408; *Contee* v. *Dawson,* 2 Bland, 275–6; *Ins. Co.* v. *Etherton,* 41 N. W. Rep. 406; *Cray* v. *Ins. Co.,* 1 Blatchf. 280.

The more general proposition that it is ineffectual to attempt to provide against a remedy in the ordinary course of judicial proceedings and to oust the jurisdiction of the Courts is also beyond dispute. *Downes* v. *Long,* 79 Md. 390; *Guaranty Trust & Deposit Co.* v. *Green Cove R. R.,* 139 U. S. 151; *Morgan Co.* v. *Texas Central R. R.,* 137 U. S. 190; *Mitchell* v. *Dougherty,* 90 Fed. Rep. 639, 645. So stipulations limiting actions to certain Courts are not binding. *Richard* v. *Ins. Co.,* 31 Mo. 518; *Amesbury* v. *Ins. Co.,* 6 Gray, 596; *Hall* v. *Ins. Co.,* 6 Gray, 185; *Nute* v. *Ins. Co.,* 6 Gray, 174. So a waiver of the right to remove a cause into the Federal Court is void. *Ins. Co.* v. *Morse,* 20 Wallace, 445.

A provision in an exchange's constitution that the arbitration committee shall take cognizance of all matters of difference between members, and that their decision shall be final, has only the same effect as an agreement to arbitrate *and can be revoked at any time before the actual submission to the committee of the decision of the matter.* *Heath* v. *N. Y. Gold Exch.,* 38 How. Pr. Rep. 168. "It is not within the power of individuals or corporations to create judicial tribunals for final and conclusive settlement of controversies. * * * 'To create a judicial tribunal is one of the functions of sovereign power; and although parties may always make such tribunals for themselves, in any specific case, by a submission to arbitra-

tion, yet the power is guarded by the most scrupulous rules. * * * It would hardly accord with this scrupulous care to secure fairness in such cases that parties should be held legally bound by the sort of engagement that exists here, by which the most extensive judicial powers are conferred upon bodies of men whose individual members are subject to continual fluctuations.' *Austin* v. *Searing*, 16 N. Y. 112." *Bauer's case*, 102 Ind. 269. "It is to be noted that agreements to submit a matter to arbitration are valid when made *after* the specific controversy has actually arisen and not when made in advance, *certainly not when the agreement provides that one of the interested parties shall be the sole arbitrator.* * * * As all persons having a moneyed demand against an individual or a corporation have a right to resort to the Courts in the first instance, when payment is withheld, to coerce payment, that right must exist, unless it clearly appears that it has been abridged or surrendered." *Bauer* v. *Samson Lodge*, 102 Ind. 269.

B. It is asserted in some jurisdictions, and vigorously and cogently denied in others, that to the general rule above stated there is an exception, to the extent of holding that in beneficial associations, it is competent for the members to make valid contracts to surrender their right to appeal to the Courts, and to agree that the tribunals of the order, itself, shall pass on these questions.

I. So far as questions of discipline, or questions relating to the internal management of the association are concerned, it may be conceded that this exception to the general rule exists, and that such regulations are valid—in the absence, of course, of *mala fides*, or a refusal to grant a hearing to the member on the part of the tribunals of the order. *Black & White Smith Soc.* v. *Vandyke*, 2 Whart. 309; *Sherry's Appeal*, 116 Pa. St. 391; *State* v. *Knights of Pythias*, 53 N. J. L. 536; *Green* v. *Board of Trade*, 174 Ill. 585; s. c., 49 L. R. A. 365; *Lawson* v. *Hewell*, 118 Cal. 613; s. c., 49 L. R. A. 400. It has been held that as to voluntary organizations, it is only in respect to rights growing out of *property rights*, or *civil rights*, that an appeal to the Courts can be had. Upon ques-

tions of doctrine and policy the society is the sole and exclusive judge. *Grand Lodge Knights of Pythias* v. *State*, 60 Ill. App. 550.

2. "There is," says the Editor of the Lawyers Reports Annotated, "a sharp conflict of opinion upon the question whether it is competent for a beneficial association absolutely to prevent the bringing of an action at law, upon a claim for benefits, by a provision in its constitution or by-laws, or in the certificates issued to members, requiring the submission of such claims to the tribunals of the order, and making their decisions final." Notes to 49 L. R. A. 372.

That a beneficial association can make a valid regulation or contract of this sort (ousting the jurisdiction of the Courts) has been decided or assumed in some jurisdictions. *Van Poutre* v. *St. Vincent de Paul Soc..* 63 Mich. 378; *Canfield* v. *Great Camp, Knights of M.*, 87 Mich. 626; s. c., 13 L. R. A. 625; *Cotter's case*, 23 Montana, 82; 3 *Am. & Eng. Ency. of Law* (2nd ed.), 1076.

That such a regulation would be void has been held in other jurisdictions. *Pepin* v. *Societe St. Jean Baptiste* (Rh. Isl. 1901), 49 Atl. Rep. 387; *Quinlan* v. *St. Francis Xavier Mut. Ben. Soc.*, 2 N. Y. City Court Rep. 356; *Burlington Vol. Rel. Assn.* v. *White*, 41 Neb. 547; *Damber* v. *Grand Lodge A. O. U. W.*, 10 Utah, 110; *Whitney* v. *Association*, 52 Minn. 378; *Chosen Friends* v. *Garrigus*, 104 Indiana, 133; *Order Chosen Friends* v. *Forsinger*, 125 Indiana, 59; s. c., 9 L. R. A. 501.

That such a regulation is void, and that it is ineffectual to prevent a suit in the ordinary Courts, without resort to the tribunals of the order, was necessarily implied in the decision of this Court in *Logan Tribe* v. *Schwartz*, 19 Md. 565. In that case, it appears from the brief of counsel for the Logan Tribe, that by a rule of the Improved Order of Red Men; "all benefit claims against the tribe, by or on behalf of a member, funeral or otherwise, must be submitted to and finally adjudged by the society." This rule was relied on to defeat the suit (19 Md. 568). But this Court sent the case back that the question on the merits of the claim, as to whether the

members' dues had been regularly paid should be paased upon by a jury. This ruling could not have been made, if the jurisdiction of the Courts were ousted, by the regulation quoted. This Court, if that rule had been binding, would have been bound to reverse the judgment of the Court below against the tribe, without a new trial, and to have left the appellee to such relief as was afforded by the tribunals of the order.

C. In some jurisdictions, it is held that while beneficial associations have no power to make a regulation that the decision of their own tribunals shall be *final*, as to the civil or property rights growing out of membership, it is still within their power to require a claim to be *first* submitted to the tribunals of the order before instituting suit at law. It is held that *a plea in abatement* is the proper method of taking advantage of the failure to first exhaust the remedies within the order. *Order Chosen Friends* v. *Forsinger*, 125 Indiana, 59; *B. & O.* v. *Stankard*, 49 L. R. A. 381.

(*a*) If the rule laid down in these decisions were in force in Maryland, and if the appellee had when the suit was instituted possessed the right to insist, by plea in abatement, that before suing it at law, the appellant should have first exhausted her remedies within the order, and have given the highest tribunal in the order an opportunity to decide on her claim before commencing litigation, it would not avail the appellee here. By filing general issue pleas, the appellee clearly waived its rights to insist on any plea in abatement. 1 *Poe on Pleading*, sec. 600; *Cruzen* v. *McKaig*, 57 Md. 459. Therefore, the plea we are considering must be held good, if at all, as a plea in bar or to the merits.

(*b*) But, apart, from the inability of the appellee, after having waived any right it might have originally had to rely upon any plea in abatement or to the jurisdiction by filing pleas, in bar, it is respectfully submitted that in Maryland it can not be contended that it is the duty of persons, whether members or others, to first exhaust their remedies within the order, and that only after so exhausting these remedies, a resort can be

had to the Courts, if a satisfactory disposition of the claim is not made, by the tribunals of the order. For it is settled in this State, that after a controversy is once submitted to the tribunals of the order for determination, the decision of those tribunals, in the absence of fraud, is final. *Anacosta Tribe* v. *Murback*, 13 Md. 91; *Osceola Tribe* v. *Schmidt*, 57 Md. 98; see also *Ryan* v. *Cudahy*, 49 L. R. A. 353.

It is, therefore, clear that, if it were held that before a beneficiary, having a claim against a fraternal insurance company, could bring a suit at law in Maryland, he must first exhaust his remedies within the order, the jurisdiction of the Courts over claims against these companies would be entirely taken away, because here, after he has applied to the tribunals of the company, if their decision should be against him, that decision would be a flat bar to any subsequent suit in Court. The result, therefore, would be that these companies would be entirely relieved from suit in the Courts, and they would never have to pay any claims in Maryland, which their own officers did not choose to require them to pay. This would be to authorize the making by them of a contract, providing "against a remedy in the ordinary course of judicial proceedings" and therefore unlawful. (*Downes* v. *Long*, 79 Md. 390.)

D. The sound principle about exhausting the remedies within the order, before appealing to the Courts, restricts the rule to cases concerning *the discipline of the order*. (Notes to 49 L. R. A. 381–2.) In these cases of discipline we have already seen that the decision of the tribunals of the order, if made in good faith, and after a hearing, is final in any event. It is reasonable and just that, if an inferior tribunal shall have decided a question of discipline or of the internal management of the order against a member, either without a hearing or in bad faith, he should be required to appeal to the higher tribunals in the order, and to seek to obtain a *bona fide* hearing there, before bringing into a Court of law a controversy about the discipline or internal government of the order, which naturally falls within the exclusive jurisdiction of the tribunals of the order.

E. The better opinion, even in those jurisdictions which lean towards modifying the general rule of law to the extent of enabling *the member's* of beneficial associations to surrender *their own personal rights* to "seek a remedy in the ordinary course of judicial proceedings," hold that the rule can only be valid as applicable to suits by *members* and that it cannot apply to suits brought by *beneficiaries* under policy of insurance, *who are not members of the order.* *Burlington Vol. Rel. Dep.* v. *White*, 41 Neb. 547; *Strasser* v. *Staats*, 59 Hun. 143. That this distinction is founded on sound principle, is clear, as is manifest when we remember that a beneficiary, in one of these orders, whose claim has accrued, is *a creditor*, and entitled to be paid in full before any of the members receive anything. *Frailey* v. *Fee*, 83 Md. 95, 96. The beneficiary in either *endowment* or ordinary policies acquires a *vested right* under the policy of insurance at the inception of the policy of insurance. *Preston* v. *Conn. Mut. Ins. Co.*, 95 Md. 114. In 3 *Am. & Eng. Ency. of Law* (2nd ed.), p. 1110, it is said: "The rights of beneficiaries to the payment of benefits are not affected by provisions in the laws of the association, giving the association, through its ruling officers, jurisdiction over its members, for the reason that the beneficiaries are not parties to the contract, which gives the association such jurisdiction."

F. It is contrary to all principle, and all precedent, that one litigant should be bound to submit the arbitration of his rights to the decision of the agents and servants of the opposing litigant. *Lazensky* v. *Knights of Honor*, 31 Fed. Rep. 595. We have already seen that even in the case of a member, where he claims, as a creditor of the association, he can sue in the ordinary tribunals. *Logan Tribe* v. *Schwartz*, 19 Md. 571.

G. This Court has several times held that these associations so far as their rights and obligations to the holders of beneficial certificates are concerned, are substantially life insurance companies, and that these certificates are virtually life insurance policies. *Yoe* v. *How. Mut. Ben. Asso.*, 63 Md. 91; *Goodman* v. *Jedidjah Lodge*, 67 Md. 128; *Expressman's Assoc.* v. *Hurlock*, 91 Md. 585.

The beneficiaries prosecute their suits in their own names, and their rights are determined by the ordinary rules applicable to life insurance.   *Thomas* v. *Cochran*, 89 Md. 390, 403; *Expressman's Assoc.* v. *Hurlock*, 91 Md. 585.

Chapter 254 of the Acts of 1890 provides:  "No life insurance company incorporated under the laws of any other State or country and doing business in the State of Maryland * * * shall make any contract of insurance *or agreement as to such contract*, other than as *plainly expressed* in the policy issued thereon."   *Profert* was made of the certificate which is the policy in this case, and it is to be found in the record.   A reading of it will show that there· is not plainly expressed upon it any provision that in case of the death of Philip Weigand, any officers of the Fraternities Accident Order should have the power to pass a resolution to allow his widow $150 in lieu of the $3,000 he was was ostensibly insured for, and that if she were not satisfied with this payment of *five per cent* of the face of her claim, she must appeal to the officers of the company, and permit them to be judges in their own case.   The attempt, by the appellee, to set up such a regulation after the death of Philip Weigand, and after he had paid his dues, and after the rights of his widow had accrued, is not only gross violation of the appellant's contractual rights, but is also in the teeth of the statute.   The alleged regulation, as to the appeal to the tribunals of the appellee, being forbidden by this statute, because not plainly expressed on the face of the certificate, is, on that account (and entirely independent of and apart from the general rule of public policy, heretofore discussed in this brief), null and void.

H.  The promise in the certificate "to pay out of its Benefit Fund Accident Department to Barbara Weigand, wife, *a sum not exceeding $3,000,* in accordance with and under the provisions of the laws governing said order and fund, upon satisfactory evidence of the death of said member through external, violent and accidental means, within the intent and meaning of the laws of the order," did not mean (especially in the

face of the above quoted Act of Assembly) that the order could have any secret law, by which the apparent insurance of $3,000 could be whittled down to $150. What it must, in fairness and honesty, be taken to mean is, that Barbara Weigand is to receive $3,000, if the fund from which it is to be drawn, when honestly administered and having a due regard to the claims of other beneficiaries upon it, will furnish such sum ; and that, if the fund will not furnish $3,000, with a due regard to other claims upon it, that then Mrs. Weigand is to get her just proportionate share of that fund.

It has been held that *the full amount* can be recovered on policies thus worded unless the society can show, *by way of defense,* that an assessment honestly and properly levied according to the laws of the society would not have produced this amount. *Lenders* v. *H. L. & A. Co.,* 12 Fed. Rep. 468; *Elkhart* v. *Mut. Aid Ben. Asso.* v. *Houghton,* 103 Ind. 289; *Legion of Honor* v. *Anderson,* 61 Tex. 300; *Bentz* v. *N. W. Aid Asso.,* 2 L. R. A., 784–5; *Lawler* v. *Murphy,* 8 L. R. A., 113; *U. Mut. Acc. Asso.* v. *Frohard,* 134 Ill. 228; s. c., 10 L. R. A., 383, 389. See also—*O'Brien* v. *Home Ben. Soc.* 117 N. Y., 310, 319.

I. This certificate of membership having been drawn by the agents of the defendant, is to be construed most strongly against the defendant, if any real doubt as to its meaning arises. *National Fire Insurance Company* v. *Crane,* 16 Md. 296; *Dalrymple* v. *Lauman,* 23 Md. 399; *Noonan* v. *Bradley,* 9 Wall. 407.

*R. B. Tippett* and *Wm. S. Bansemer,* for the appellee.

The uniform law throughout the country is to give full force and effect to mandatory by-laws such as the one in point which require the submission of claims against the association to the tribunals within the order, and which in addition, hold that a decision from the highest internal tribunal is conclusive as between the complaining member and his co-members. In addition to *Murbach's case,* 13 Md. 91, and *Osceola Tribe* v. *Schmidt,* 57 Md. 102, a great number of cases can be found

in vol. 3 of the second edition of the *Amer. and Eng. Ency.*, p. 1076.

These by-laws are to be given full effect in a society comprising a numerous membership, which derives its revenue from small monthly contributions, to which it is of the utmost importance that its business be carried on inexpensively and with a proper regard for the objects sought to be accomplished. "The member voluntarily enters the association with knowledge of its by-laws and agrees to be bound by such as are not in violation of law, and certainly no principle of law is violated in making provision for the submission of claims of a member to the highest body of the association with which he voluntarily unites himself. It is but just to the association that its chief officers should have an opportunity to investigate the claims asserted by the member before it is harrassed by litigation, and indeed, the provision is presumptively for the benefit of the member, for the fair inference is that the governing officers will do their duty and allow all rightful claims. At all events there is no principle of law violated by a by-law requiring an appeal to the governing body. By-laws similar to that under consideration have often been upheld. There is, indeed, no contrariety of opinion upon the question. We have no doubt that a by-law requiring, in case of a decision adverse to the claimant, an appeal to the governing body of the society is reasonable and valid." *Supreme Lodge* v. *Forsinger*, 125 Ind. 52.

Among the best considered cases on this point are : *Rood* v. *Railway Passenger and Freight Association*, 31 Fed. 62; *Van Pouche* v. *St. Vincent Society*, 63 Mich. 378; *Fillmore* v. *Great Camp*, 103 Mich. 441; *Robinson* v. *Templars*, 117 Cal. 375; *Levi* v. *Magnolia*, 110 Cal. 297; *Meyers* v. *Fritchman*, 6 Pa. Sup. Ct. Rep. 580; *Shirtcliffe* v. *Wall*, 74 N. Y. Supp. 189. A very ably considered case on the subject is that of *Cotter* v. *Grand Lodge*, 23 Mont. 82, 91.

Though it would seem from the Maryland and other of the authorities cited that in associations of the character of the appellee the tribunals constituted and established by the agree-

ment of the members with one another are conclusive, and that such claims for benefits are subjects entirely within the organization, and are to be dealt with in accordance with its laws and in no other way, yet it is the rule beyond dispute that the remedies within the organization must be first entirely exhausted before any resort can be had to civil Courts. See *Supreme* v. *Forsinger*, 125 Ind. 52; *Meyers* v. *Jenkins*, 63 Ohio St. 101, 120; *Jeane* v. *Grand Lodge*, 86 Me. 436; *Karchen* v. *Supreme Lodge*, 137 Mass. 367, 372; *Smith* v. *Ocean Castle*, 58 N. J. L. 198; *Levi* v. *Iron Hall*, 67 N. H. 593; *Harrington* v. *Workingmen's Association*, 70 Ga. 342.

By the express terms of the contract in the case at bar the by-laws are binding upon the beneficiary, though in the absence of these express stipulations their effect would be the the same. A claimant for death benefits stands in the same position in her duty to go before the tribunals of the order as does the member himself. See *Canfield* v. *Great Camp*, 87 Mich. 626; *Jeane* v. *Grand Lodge*, 86 Me. 436; *Cotter* v. *Grand Lodge*, 23 Mont. 91; *Chambers* v. *Supreme Tent*, 200 Pa. St. 245; *Meyers* v. *Fritchman*, 6 Superior Ct. Rep. Pa. 580.

From the mandatory character of the by-law set out in the plea the remedy within the order cannot be considered merely cumulative to the right to go into the law Courts. It is beyond denial that the requirement to first exhaust the remedies provided within the order is merely a reasonable condition precedent to instituting a civil action and must be upheld. The refusal of the appellant to comply therewith constituted a complete bar to her suit.

BRISCOE, J., delivered the opinion of the Court.

This is an action at law brought in the Court of Common Pleas of Baltimore City by the appellant, the widow of Philip Weigand, of Baltimore City, against the appellee, a corporation conducting a fraternal beneficial insurance business for the benfit of its members.

It appears that the appellee on the 26th day of January, 1900, issued a certificate of membership to Philip Weigand

payable to the appellant as beneficiary, for a sum not exceed-
ins three thousand dollars, in accordance with and under the
provisions of the laws governing the order.

Philip Weigand died on the 9th of June. 1900, and subse-
quently the appellant, the beneficiary, filed her claim for ben-
efits with the order, which was approved by the Grand Exec-
utive Committee for the sum of one hundred and fifty dollars.

The appellant declined to accept the amount as thus al-
lowed, and on the 5th of December, 1901, instituted this suit
to recover the sum of $3,000, the amount of the insurance
stated in the policy.

To the declaration, the defendant pleaded, first, never in-
debted as alleged; second, never promised as alleged, and
third, a special plea.   The first and second pleas were with-
drawn and a demurrer was interposed to the third, and as this
plea contains the defense relied upon by the company and pre-
sents the material question in the case it will be set out here.
The plea is in effect, as stated by the appellee in his brief, as
follows :

1st. The appellee is a social and beneficial order having a
lodge system and conducting itself for the sole benefit of its
members with no attempt at profit making.   .Its funds are
raised by mutual and voluntary assessments and contributions.

2nd. The contract between the appellant's husband and the
appellee is embodied in his application for membership, the cer-
tificate of membership and the laws of the defendant order, the
latter of which are declared to be binding upon the applicant
and his beneficiary.

3rd. Under said laws the Grand Executive Committee of
the order was required to pass upon and decide whether pay-
ment should be made of the claim of the appellant.

4th. That under section 32 of the laws of the appellee any
beneficiary who considers the decision of said Grand Execu-
tive Committee against him in respect to a claim for benefits
is unjust and not in accordance with the order, is required to
appeal in the following manner, that is "from the decision of
the Grand Executive Committee to the Grand Council within
sixty days after the decision is rendered."

5th. The appellee made application for the payment to her of benefits in the amount of three thousand dollars ($3,000). The Grand Executive Committee, acting upon the application, came to a decision (upon the evidence offered to prove that the deceased died by such accidental means as was within the intent and meaning of the laws of the order) that, under the laws of the order, the appellant was entitled to one hundred and fifty dollars ($150) and no more.

6th. The decision of the Grand Executive Committee was immediately made known to the appellant, and she was further notified that if she was not satisfied with the decision she should appeal as prescribed in section 32 of the laws of the order. The appellee refused to appeal, which, in effect, was a refusal to exhaust her remedies before the tribunals of the defendant order."

The demurrer to this plea was overruled and judgment being entered for the plaintiff for the amount awarded, the plaintiff has appealed.

The legal question raised on the demurrer and the one submitted for our decision, is whether a beneficiary in a certificate of fraternal insurance to whom the policy is payable, is precluded from bringing a suit in a Court of law to recover her claim by reason of the existence of the laws of the order, which require any beneficiary who considers the decision of the Grand Executive Committee as unjust and not in accordance with the laws of the order, to appeal from the decision of the Grand Executive Committee to the Grand Council within sixty days after the decision is rendered.

Now whatever may be the decisions of the Courts elsewhere, and it may be conceded they are not in accord, the question here raised, has been settled in this State by the decisions of this Court, in *Anacosta Tribe* v. *Murback*, 13 Md. 94, and *Oseola Tribe* v. *Schmidt*, 57 Md. 98. These cases were relied upon and adopted in the recent case of *Triesler* v. *Wilson*, 89 Md. 177, and it is there said that in private beneficial institutions, operating on the members only, they may, for reasons of policy and convenience affecting their welfare and

perhaps their existence, adopt laws for their government to be administered by themselves, to which every person who joins them assents, and which require the surrender of no right that a man may not waive.   And that a by-law, in the absence of fraud, would be held conclusive on the member.

In the case at bar, it will be seen, that " the laws of the order as then in force, and to be hereafter enacted by the Grand Council " were specifically made a part of the contract of assurance and the fund was payable in accordance with and under the laws of the order as stated in the certificate of membership.   The law of this association provided an appeal by the beneficiary from the decision of the Grand Executive Committee to the Grand Council within sixty days after the decision was rendered against her, and the rule being a valid and reasonable one, the appellant was clearly bound by it.

But it is urged upon the part of the appellant that the rules and regulations of beneficial and voluntary associations regulating appeals to its tribunals are only valid in so far as they relate to questions of doctrine and the internal management of the order, and have no reference to property rights.   We do not so construe the cases upon this subject.   In *Vandyke's case*, 2 Whart. 312, the Supreme Court of Pennsylvania held that where a beneficial society decided under its by-laws that a member was not entitled to benefits, the decision was conclusive upon him.   This case was cited with approval by this Court in *Osceola Tribe* v. *Schmidt*, 57 Md. 98.

Applying the principle settled by these cases to the one now before us, there seems to be no valid reason why the rule should not apply to a beneficiary as well as to the member insured.   The contract of membership is made with reference to the by-laws and regulations of the association and these are treated as part of the contract.   Section 32 of the laws of the order provides that it shall apply to any member, beneficiary, or other claimant, and as these by-laws constitute a part of the contract between the company and the insured, and as the benefit fund is made payable to the beneficiary, " in ac-

cordance with..and under the provisions of the laws governing the order," the appellant must be held subject to them.

Finding no error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided June 30th, 1903.)